Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2455 | **DATE** | 6/2/2004 |
| **CASE TITLE** | Lustig vs. Brown et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** The motions (Docs 4-1 & 5-1) to dismiss of Brown, Express, and Nurquez are granted. Ruling set for June 10, 2004 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 0 3 2004 | 10 |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | JUN 0 2 2004 | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHELDON LUSTIG, )
)
        Plaintiff, )
)
vs. ) 04 C 2455
)
ANNA BROWN, individually and d/b/a Stray Cat )
Transport; EXPRESS BOAT TRANSPORT )
CORP., a Florida corporation; and YANEL L. )
MARTIN NURQUEZ, individually, )
)
        Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motions to dismiss of Defendants Anna Brown ("Brown"), Express Boat Transportation Corporation ("Express"), and Yanel L. Martin Nurquez ("Nurquez"). For the reasons set forth below, the motions are granted.

## BACKGROUND

Because this is a motion to dismiss, we initially accept all well pleaded facts and allegations in the complaint as true and construe all inferences in favor of the Plaintiff. Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).



On June 30, 2003, Plaintiff Sheldon Lustig ("Lustig") of Illinois needed to transport his yacht (the "Yacht") from Mississippi to the Chicago area in time for the July 4th holiday. Lustig engaged in discussions with Brown, who runs a Florida based trucking company, regarding the transportation of the Yacht. Brown and Lustig entered into a contract (the "Contract") wherein Brown would load the Yacht for transportation at 10:00 a.m. on July 2, 2003, and deliver the Yacht to either Chicago or Michigan City, Indiana, by noon on July 3, 2003. Lustig informed Brown of the importance of the noon delivery time because marina personnel would be leaving early on July 3 to begin their holiday celebrations. In order to secure delivery in time for the July 4th holiday, Lustig agreed to pay a $2,000 premium over Brown's normal price of $2,900. Because Brown did not own any trucks capable of performing under the Contract, she sub-contracted with Express to provide a truck to transport the Yacht to a Chicago area marina.

After signing the Contract, Lustig hired a local crane operator to load the Yacht onto Brown's truck when it arrived in Mississippi. Lustig's cost for the crane's services was $250 per hour, which was known to Brown. The crane arrived on site at 9:00 a.m. and, on Brown's instructions, lifted the Yacht at 10:00 am. When Brown's truck failed to arrive at the scheduled time, numerous conversations between Lustig and Brown ensued, with Brown assuring Lustig that the truck would be arriving soon

and that the Yacht should stay suspended by the crane. The Yacht remained suspended until 6:00 p.m., when a truck belonging to Express arrived. By 7:00 p.m. the Yacht was loaded onto the Express truck. Because the truck did not arrive until 6:00 p.m., Lustig incurred the expenses of eight additional hours of crane time.

When the Express owned truck arrived in Mississippi, it was driven by Nurquez, a Florida resident. Neither Express, Nurquez, nor Brown had obtained certain permits, escort vehicles, or "pole height cars" for the Yacht's interstate journey. After he departed with the truck from Mississippi, on July 2, 2003, the Arkansas Highway Patrol arrested Nurquez and issued him citations for failing to have a permit for an oversize load and for operating the Express truck in excess of the maximum daily hours allowed under federal and Arkansas law. It seems that Nurquez had already surpassed the allowable hours limit under federal and Arkansas law by the time he arrived in Mississippi to pick up the Yacht earlier that day. Before being allowed to continue his journey, Nurquez was required to obtain an Arkansas oversized load permit and to take the Express truck out of service for at least eight hours so that Nurquez could get some sleep.

When it became apparent that the Yacht could not be delivered by noon on July 3, Express and Brown contacted Lustig and requested an extension of time. Lustig responded that the noon deadline was critical as the marina staffs would be off duty for

the remainder of the holiday weekend and that the Express truck would then be required to stay at a marina until the Yacht could be unloaded on July 6. Lustig was able to locate an alternative marina in Winthrop Harbor, Illinois, that could unload the Yacht on the Fourth of July. Lustig granted Express and Brown permission to deviate from the Contract and send the Yacht to Winthrop Harbor for unloading.

On the night of July 3, 2003, the Express truck was traveling northbound on Interstate 94 ("I-94") when it passed under a bridge near Chicago's Loop. As the Yacht passed under the bridge, whose underside is approximately thirteen-and-one-half feet from the road's surface, the uppermost portion of the Yacht struck the bridge. The collision damaged the Yacht, scattering pieces of it onto the highway. It appears that Nurquez violated numerous provisions of Illinois law by driving the Express truck with its oversize load on I-94 after sundown and by failing to report the incident to the authorities.

On March 17, 2004, Lustig filed a complaint in the Circuit Court of Cook County containing the following allegations: (1) Breach of contract for Brown's failure to load the Yacht at 10:00 a.m. on July 2, 2003, and for charging Lustig for permits and escort vehicles that were never obtained; (2) common law fraud and Illinois statutory consumer fraud for Brown's representations as to the Yacht's pick up time, safety, and delivery, as well as its transportation's compliance with applicable laws and

regulations; (3) violations of four federal transportation regulations by all defendants; (4) negligence by all defendants; and (5) loss of use of the Yacht. On April 6, 2004, Express and Nurquez filed a petition for removal, claiming that federal question jurisdiction exists under 28 U.S.C. § 1137 and 49 U.S.C. § 14706(a)(1). Brown, Express and Nurquez now move to dismiss Lustig's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citing Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we now address the motion before us.

## DISCUSSION

Defendants argue that Lustig's complaint should be dismissed because the exclusive remedy against common carriers for damages to goods shipped in interstate

commerce is the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Carmack Amendment "provides shippers with the statutory right to recover for actual losses or injury to their property caused by carriers involved in the shipment" of goods in interstate commerce. Gordon v. United Van Lines, Inc., 130 F.3d 282, 286 (7th Cir. 1997). Finding that the Carmack Amendment is the exclusive remedy for the loss of or damage to goods shipped in interstate commerce, the Seventh Circuit holds that state law claims for such loss or damage (be they under a tort, contract, or statutory theory) are barred as preempted by the Carmack Amendment. Id. at 289. While claims of negligence causing damage to cargo are clearly preempted, so to are state claims alleging fraud, breach of contract, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.*, if the measure of damages is likely to be the loss or damage to the shipped goods. Gordon at 289. As such, we find that Counts II, III, VIII, and IX[1] are preempted under the Carmack Amendment and should accordingly be dismissed.

Counts IV-VII of the complaint allege various violations of the Code of Federal Regulations relating to highway transportation. However, Lustig does not rely on, nor has our own research uncovered, any authority indicating that a private cause of action

---

[1] Lustig incorrectly labels his ninth count on the complaint as "Count IV."

exists for violations of the federal regulations at issue. These counts are thus dismissed.

The remaining count in Lustig's complaint is Count I, which alleges breach of contract for Brown's failure to timely load the Yacht in Mississippi (resulting in Lustig being charged with excessive crane rental fees) and for Brown charging Lustig for permits and escort vehicles that were never obtained. This claim alleges damages of only $6,400, far less than the requisite $75,000 needed to establish diversity jurisdiction over the claim. 28 U.S.C. § 1332. Because all the other counts in Lustig's complaint have been dismissed, we decline to exercise supplemental jurisdiction over the lone state law claim of Count I pursuant to 28 U.S.C. § 1367(c)(3). Kennedy v. Schoenberg, Fisher & Newman, Ltd. 140 F.3d 716, 728 (7th Cir. 1998).

## CONCLUSION

Based on the foregoing analysis, the motions to dismiss of Brown, Express, and Nurquez are granted.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: JUN - 2 2004