# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 2455 | **DATE** | 9/16/2004 |
| **CASE TITLE** | | Lustig vs. Brown et al | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 1/27/2005 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant Brown's motion (Doc 15-1) to dismiss is denied. Defendants are given to September 30, 2004 to answer the amended complaint. All discovery to be completed by January 27, 2005.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | SEP 1 7 2004 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | | 19 |
| | Mail AO 450 form. | | | SEP 1 7 2004 | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| SCT | courtroom deputy's initials | | | | | |

U.S. DISTRICT COURT
CLERK
2004 SEP 16 PM 2:31

Date/time received in central Clerk's Office

mailing deputy initials

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHELDON LUSTIG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 2455 |
| | ) | |
| ANNA BROWN, individually and d/b/a STRAY | ) | |
| CAT TRANSPORT; EXPRESS BOAT | ) | |
| TRANSPORT CORP., a Florida corporation; and | ) | |
| YANEL L. MARTIN NURQUEZ, individually, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

SEP 1 7 2004

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on the motion of Defendant Anna Brown motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons set forth below, the motion is denied.

### BACKGROUND

Because this is a motion to dismiss, we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See, e.g., Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 981 (7th Cir. 2004).

19

On June 30, 2003, Plaintiff Sheldon Lustig needed to transport a yacht from Mississippi to Illinois in time for the Fourth of July holiday. Lustig contacted Brown to secure transportation of the yacht. Brown, who informed Lustig that she "was in the trucking business and was experienced in transporting large yachts," offered to transport the yacht for $4,900. Brown and Lustig agreed that Lustig would have the yacht ready for loading onto a truck at 10 a.m. on July 2 and Brown would have the yacht delivered to Chicago or Michigan City, Indiana, by noon on July 3, 2003. At no time during these negotiations or thereafter did Brown disclose that she was acting on behalf of another.

The contract also required Brown to procure all necessary permits and provide escort vehicles as provided by law. Brown subcontracted with Defendant Express Boat Transport Corporation ("Express") to perform her obligations under the contract. At 10 a.m. on July 2, a crane operator hired by Lustig lifted the yacht for loading. When Brown's truck failed to arrive as scheduled, several conversations took place, during which Brown assured Lustig that the truck's arrival was imminent and that the crane should remain on-site with the yacht ready for loading. Brown knew the cost of the crane and its operator was $250 per hour. Brown's truck did not arrive until 6 p.m., necessitating eight additional hours of crane time.

By 7 p.m., the yacht was loaded onto the Express-owned truck driven by Defendant Yanel Nurquez. Neither Brown nor Express had obtained the necessary permits, escort vehicles, or "pole height cars" for the yacht's interstate passage. Additionally, when Nurquez arrived in Mississippi to pick up the yacht, he had surpassed the maximum number of hours he was allowed to operate the truck in a single day under federal and Arkansas law. Nevertheless, Nurquez proceeded to transport the yacht. En route, he was stopped by the Arkansas Highway Patrol and issued citations for failing to have a permit for an oversize load and for operating the truck in excess of the allowable number of daily hours. Before he could continue, Nurquez was required to obtain an oversize load permit and take the truck out of service for eight hours so that he could rest.

As a result of these delays, the yacht could not be unloaded at either of the originally intended harbors until July 6, and the boat would have to remain loaded on the Express truck in the interim. When Brown and Express informed Lustig of this development, he sought and located an alternative marina in Winthrop Harbor, Illinois, where the yacht could be unloaded on July 4. Lustig informed Brown and Express of the new arrangement and the yacht was rerouted to Winthrop Harbor for unloading. On the night of July 3, the Express truck transporting the yacht passed under a bridge

near downtown Chicago. As the yacht came under the bridge, its uppermost portion struck the underside of the bridge, damaging it.

On March 17, 2004, Lustig filed suit in Illinois state court, alleging several violations of state law and federal highway transportation regulations. Express and Nurquez removed the case to this court. All three defendants subsequently filed a motion to dismiss the complaint on grounds of preemption by the Carmack Amendment of the Interstate Commerce Act. 49 U.S.C. § 14706. The motion was granted in Lustig v. Brown, 2004 WL 1244147 (N.D. Ill. June 3, 2004).

On June 24, Lustig filed an amended complaint, alleging violations of the Carmack Amendment. Brown now moves to dismiss the claims against her individually pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When a complaint is challenged by a motion to dismiss, the court presumes that all well-pleaded allegations are true, resolves all doubts and inferences in the plaintiff's favor, and construes allegations of the complaint in the light most favorable to the plaintiff. See Treadway v. Gateway Chevrolet Oldsmobile Inc., 362 F.3d 971, 981 (7th Cir. 2004); Bontkowski v. First Nat. Bank of Cicero, 998 F.2d 459, 461 (7th Cir.

1993). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002). A court should only dismiss the allegations of a complaint when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we now address the motion before us.

## DISCUSSION

Brown argues that Lustig's claims against her individually should be dismissed on the grounds that Brown was acting as an agent of Stray Cat Enterprises, Inc., a corporation doing business as Stray Cat Transport. It is axiomatic that a corporation operates only through its officers and directors, and those agents must be able to exercise business judgment without the specter of personal liability. See Stafford v. Puro, 63 F.3d 1436, 1442 (7th Cir. 1995).[1] As a result, corporate officers, shareholders, and directors are generally not liable for the corporation's obligations

---

[1] This action is governed exclusively by federal law in the form of the Carmack Amendment, as discussed in our prior ruling. Nevertheless we apply principles of agency, corporate law, and contract law from Illinois decisions because the parties have not specified nor have we detected that those principles are inconsistent with the goals of the Carmack Amendment. See Harrell v. United States, 13 F.3d 232, 235 (7th Cir. 1993).

solely by their association with it. See Itofca, Inc., v. Hellhake, 8 F.3d 1202, 1204 (7th Cir. 1993). Attached to Brown's motion are documents evidencing Stray Cat's corporate status, but Lustig does not appear to contest that Stray Cat is a corporation.

Lustig does not quarrel with the general rule that an agent is not personally liable for a breach of contract by her principal if the agency relationship has been disclosed at the time the contract is executed. See Merrill Tenant Council v. U.S. Dep't of Housing & Urb. Dev., 638 F.2d 1086, 1095 (7th Cir. 1981); Strzelecki v. Schwarz Paper Co., 824 F. Supp 821, 829 (N.D. Ill. 1993). Rather, he argues that this case represents an exception to that general rule that occurs when the agent does not inform the contracting party that she is acting on behalf of a particular principal, the so-called "undisclosed principal" exception. See Freeman v. Liu, 112 F.R.D. 35, 39 (N.D. Ill. 1986). A related exception involves a scenario in which the third party is aware that the agent is contracting on behalf of a principal but does not know the identity of the principal. See id. at 39 n.7. If either of these exceptions applies, the contracting agent can be personally liable on the contract. Evans Products Co. v. I.C.C., 729 F.2d 1107, 1113 (7th Cir. 1984); Freeman, 112 F.R.D. at 39. An agent wishing to avoid personal liability has the burden to notify the third party of the full name of the principal; it is not enough that the third party could discover the identity of the principal after a reasonable inquiry. Freeman, 112 F.R.D. at 39.

The complaint unequivocally alleges that Brown did not disclose to Lustig at any time that she was acting on behalf of another. Although the written contract attached to the amended complaint lists the contracting party as "Stray Cat Transport," there is no indication within that document of Stray Cat's corporate status. Accepting these facts as true and construing them in a light most favorable to the plaintiff, as we must for purposes of this motion, Lustig has pleaded a claim that could fall within one of the exceptions to the general rule of nonliability for corporate agents. That is sufficient to withstand Brown's motion to dismiss the individual claims against her.

## CONCLUSION

Based on the foregoing analysis, Brown's motion to dismiss is denied.


Charles P. Kocoras
Chief Judge
United States District Court

Dated: SEP 1 6 2004